UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

PARWANA JAN,

Plaintiff,

-against-

ALEJANDRO MAYORKAS, in his official
capacity as Secretary of Department of
Homeland Security; UR JADDOU, in her official
Capacity as Director of U.S. Citizenship &
Immigration Services; U.S. CITIZENSHIP AND
IMMIGRATION SERVICES; MERRICK
GARLAND, in his official capacity as the Attorney
General of the United States,

Defendants.

**MEMORANDUM AND ORDER**
24-CV-1686 (LDH)

LaSHANN DeARCY HALL, United States District Judge:

Parwana Jan ("Plaintiff") brings the instant action against Secretary of Homeland

Security Alejandro Mayorkas, the United States Citizenship and Immigration Services

("USCIS"), Director of USCIS Ur M. Jaddou, and Attorney General of the United States,

Merrick Garland ("Defendants").[1]  Plaintiff alleges that Defendants have unreasonably delayed

adjudication of her application for asylum in violation of the Administrative Procedures Act

("APA") and seeks a writ of mandamus, pursuant to 28 U.S.C. § 1361, to compel Defendants to

act on her application.  Defendants move pursuant to Federal Rules of Civil Procedure 12(b)(1)

and 12(b)(6) to dismiss the complaint in its entirety.

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the official-capacity defendants, who ceased to
hold office while the action was pending, have been automatically substituted for their successors.  Fed. R. Civ. P.
25 ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise
ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party.").
Accordingly, Alejandro Mayorkas has automatically been substituted for Kristi Noem, Ur Jaddou has been
automatically substituted for Kika Scott, and Merrick Garland has been automatically substituted for Pamela Bondi.

## BACKGROUND[2]

Plaintiff is a native of Pakistan who is seeking asylum in the United States.  (Compl. ¶¶ 10, 11, ECF No. 1.)  On May 28, 2020, Plaintiff filed an application for asylum, known as a Form I-589, with USCIS.  (*Id.* ¶ 11.)  Plaintiff received a notice of receipt from USCIS on July 13, 2020, and completed his biometrics collection on August 20, 2020.  (*Id.* ¶¶ 12–13.)  On May 16, 2022, October 16, 2022, and January 17, 2023, Plaintiff sent letters to the New York Asylum Office inquiring about the status of his asylum application, to which he did not receive a response.  (*Id.* ¶¶ 15–16.)  On November 13, 2023, Plaintiff submitted a request for an expedited interview, which was denied on November 21, 2023.[3]  (*Id.* ¶ 17.)  As of February 22, 2024, the USCIS Case Status Online tracker stated that the next step in Plaintiff's application is an in-person interview.  (*Id.* ¶ 14.)  Plaintiff's application remains pending.  (*Id.* ¶ 1.)

## DISCUSSION

### I.    Plaintiff's Mandamus Act Claim

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  The plaintiff bears the burden of establishing beyond a preponderance of the evidence that subject-matter jurisdiction exists.  *Id.*  "In reviewing a Rule 12(b)(1) motion to dismiss, the court 'must accept as true all material factual allegations in the complaint, but [the court is] not to draw inferences from the complaint favorable to plaintiff[].'"  *Tiraco v. New York State Bd. of Elections*, 963 F. Supp. 2d 184, 190

---

[2] The following facts are taken from the complaint and are assumed to be true for the purpose of this memorandum and order, unless otherwise indicated.

[3] Plaintiff notes that he made the request because "[his] family members are in harm's way in Pakistan."  (Compl. ¶ 17.)  However, Plaintiff does not clarify whether he noted this basis in the request itself.

(E.D.N.Y. 2013) (quoting *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004)). Further, "[i]n resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings." *Makarova*, 201 F.3d at 113.

Plaintiff seeks a writ of mandamus to require the government to immediately adjudicate his asylum application, which has been pending since May 28, 2020.  (*See* Compl. ¶¶ 22–24.) The Mandamus Act gives district courts "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361.  The "exercise of the power of mandamus is a matter committed to the sound discretion of the [trial] court." *Pesantez v. Johnson*, No. 15-CV-1155, 2015 WL 5475655, at *3 (E.D.N.Y. Sept. 17, 2015) (quoting *Cartier v. Sec'y of State*, 506 F.2d 191, 199 (D.C. Cir. 1974)).  However, before the Court may exercise the power of mandamus, a plaintiff must show "(1) a clear right in the plaintiff to the relief sought; (2) a plainly defined and peremptory duty on the part of the defendant to do the act in question; and (3) no other adequate remedy available." *Anderson v. Bowen*, 881 F.2d 1, 5 (2d Cir. 1989) (citations and internal quotation marks omitted).  Defendants argue that Plaintiff cannot satisfy the first and third requirements and therefore urge dismissal of the complaint.[4]

---

[4] The question of whether the three requirements for a writ of mandamus present a jurisdictional or merits inquiry remains an open question in this circuit. *See City of New York v. United States Postal Serv.*, 519 F. Supp. 3d 111, 127 n.9 (E.D.N.Y. 2021) ("It is not always clear whether a failure to satisfy the elements of a mandamus claim under § 1361 warrants dismissal for lack of jurisdiction or for failure to state a claim.").  Because Defendant moves to dismiss Plaintiff's Mandamus Act claim pursuant to Rule 12(b)(1), the Court will treat the mandamus requirements as elements necessary to establish subject matter jurisdiction.

(Mem. of L. in Supp. of Defs.' Mot. to Dismiss ("Defs.' Mem.") at 15–19, ECF No. 11.)  The Court agrees.

Plaintiff maintains that he has a clear right to a writ of mandamus in this case given the Immigration and Nationality Act's ("INA") provision that "in the absence of exceptional circumstances, the initial interview or hearing on the asylum application shall commence not later than 45 days after the date an application is filed."  (Compl. ¶ 24 (citing 8 U.S.C. § 1158(d)(5)(A)(ii)).)  However, as Defendant argues, the INA does not provide for any "substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person."  8 U.S.C. § 1158(d)(7).  Indeed, a legion of courts has held that § 1158(d)(7) unequivocally denies asylum applicants a private right of action to enforce the procedural requirements found in that statute.  *Chen v. Wolf*, No. 19-cv-9951, 2020 WL 6825681, at *3 (S.D.N.Y. Nov. 20, 2020) (citation and quotations omitted) (dismissing mandamus claim in case challenging delay of I-589 adjudication, "where, as here, the statute itself specifically provides that the timing provisions do not 'create any substantive or procedural right or benefit,'" the plaintiff "cannot make a showing that he has a right – let alone a clear right – to the requested relief") (collecting cases); *see also Ngai v. Mayorkas*, No. 22-CV-5358, 2024 WL 1346530, at *2 (E.D.N.Y. Mar. 29, 2024).  Plaintiff's rebuttal that the INA sets a mandatory deadline for USCIS to adjudicate I-589 applications simply fails to recognize the reality that "the INA's timing provisions must be read in conjunction with § 1158(d)(7)."  *Chen*, 2020 WL 6825681, at *5.  This Court joins "the chorus of other courts across the country" that have concluded that "§ 1158(d)(7) of the INA bars Plaintiff from claiming any legally enforceable right to have [his] application[ ] adjudicated within the provided timeframes."  *Id.* at

*3 (internal quotation marks and citation omitted).  Plaintiff does not possess a clear right to the relief he seeks from the Court.

Nor has Plaintiff established that there is no other adequate remedy available to compel Defendants to adjudicate his asylum application.  To the contrary, Plaintiff has demonstrated the availability of at least one such alternative remedy in the instant action—an "unreasonable delay" claim under the APA, 5 U.S.C. § 706(1).  Indeed, Plaintiff pursues a § 706(1) claim in this action. (Compl. ¶¶ 25–29.)  As Defendants aptly argue, Plaintiff's ability to do so precludes mandamus relief.  (Defs.' Mem. at 18.); *Zheng v. Garland*, No. 22-CV-6039, 2024 WL 333090, at *5 (E.D.N.Y. Jan. 29, 2024) (dismissing mandamus claim due to possible § 706(1) remedy although the remedy was "not available because of the plaintiff's particular circumstances"); *Luo v. USCIS*, No. 23-cv-1104, 2023 WL 5672041, at *3 (E.D.N.Y. Sept. 1, 2023) (explaining that mandamus relief was not available because an alternative adequate remedy was possible under the APA "even though . . . Plaintiff's APA claim also fails on the merits" (citation and internal quotation marks omitted)); *Almakalani v. McAleenan*, 527 F. Supp. 3d 205, 226 (E.D.N.Y. 2021) (dismissing mandamus claim because "in the event that Plaintiffs did have a clear right to an immediate adjudication and Defendants did have a clear duty to adjudicate within a specified time frame, Section 706(1) of the APA would provide Plaintiffs with an adequate remedy").  In opposition, Plaintiff maintains that "[t]here is no requirement to exhaust administrative remedies" and that "[e]ven if such a requirement existed," they were exhausted.  (Pl.'s Mem. L. in Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Opp'n) at 35–38.)  Plaintiff clearly misses the point.  Defendant does not argue, nor does the Court hold, that Plaintiff was required to exhaust any administrative remedies.

Instead, because Plaintiff fails to demonstrate that there is no other adequate remedy available to him, as the Mandamus Act requires, his claim for mandamus relief must be dismissed.[5]

## II.    Plaintiff's APA Claim

To survive a motion to dismiss brought pursuant to Rule 12(b)(6), a complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A court deciding whether to grant a motion to dismiss must "draw all reasonable inferences in [the plaintiff's] favor, assume all 'well-pleaded factual allegations' to be true, and 'determine whether they plausibly give rise to an entitlement to relief.'" *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (quoting *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009)) (citation omitted). "[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.  Further, a court is not obligated to accept a plaintiff's "conclusory allegations or legal conclusions masquerading as factual conclusions." *Faber*, 648 F.3d at 104 (quoting *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008)).

Plaintiff claims that Defendants' delay in adjudicating his asylum application is so unreasonable as to violate the APA.  (Compl. ¶¶ 27–28.)  The APA provides for judicial review of an agency action that is "unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706(1).  It is

---

[5] As Defendant argues, yet another alternative adequate remedy is available to Plaintiff—USCIS's "expedite request" procedure, which allows expedition for "emergencies and urgent humanitarian reasons."  (Defs.' Mem. at 19); *see Expedite Requests*, USCIS, https://www.uscis.gov/forms/filing-guidance/how-to-make-an-expedite-request (last updated Jan. 24, 2025).  The availability of this relief also independently precludes mandamus relief in this case.  *He v. Garland*, No. 23-cv-5386, 2024 WL 3708146, at *2 (E.D.N.Y. Aug. 7, 2024) (holding that mandamus jurisdiction was defeated owing to alternative remedy of, inter alia, "USCIS permi[tting] I-589 applicants to file an expedite request to schedule an interview outside of the priority [] order"); *Zheng*, 2024 WL 333090, at *5 (holding that the availability of an expedite request constitutes an alternative remedy that defeats mandamus relief, even where USCIS had denied plaintiff's request).

well established that evidence of the mere passage of time cannot support a claim of unreasonable delay. *INS v. Miranda*, 459 U.S. 14, 18 (1982) ("Although the [length of time that the INS took to process respondent's application] was indeed long, we cannot say in the absence of evidence to the contrary that the delay was unwarranted."). To guide its analysis in determining reasonableness, the Court looks to the "source of the delay—e.g., the complexity of the investigation, as well as the extent to which the defendant participated in delaying the proceeding." *Reddy v. Commodity Futures Trading Comm'n*, 191 F.3d 109, 120 (2d Cir. 1999). And "[i]n cases where the petition is seeking to compel action by immigration authorities, courts [also] utilize the six-factor test articulated in *Telecommunications Research & Action v. F.C.C.*, 750 F.2d 70, 79 (D.C. Cir. 1984) ("*TRAC*") to determine whether relief under the APA is warranted." *Hoo Loo v. Ridge*, No. 04-CV-5553, 2007 WL 813000, at *4 (E.D.N.Y. Mar. 14, 2007). The *TRAC* factors are:

> (1) the time agencies take to make decisions must be governed by a 'rule of reason;' (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for the rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'"

*TRAC*, 750 F.2d at 80 (internal citations and quotation marks omitted). Defendants argue that Plaintiff's unreasonable delay claim must be dismissed for failure to state a claim because Plaintiff has not sufficiently alleged that the delay in adjudication of his asylum application is unreasonable. The Court agrees.

7

As to the source of the delay, Plaintiff alleges that the delay in adjudication was caused, in part, by USCIS's adoption of the last-in-first-out ("LIFO") rule to govern the adjudication of asylum applications.  (Compl. ¶ 31.)  Since January 31, 2018, USCIS has adjudicated asylum applications on a LIFO basis, "schedul[ing] asylum interviews for recent applications ahead of older filings."  *See USCIS to Take Action to Address Asylum Backlog,* USCIS, https://www.uscis.gov/archive/uscis-to-take-action-to-address-asylum-backlog (last updated Feb. 2, 2018).  USCIS implemented the policy "to stem the growth of the agency's asylum backlog," to "deter those who might try to use the existing backlog as a means to obtain employment authorization," and to "identify frivolous, fraudulent or otherwise non-meritorious asylum claims earlier and place those individuals into removal proceedings."  *Id.*  In light of these facts, the Court concludes that the delayed adjudication of Plaintiff's application was not caused by Defendants' lack of diligence.  Rather, the delay was the result of the LIFO rule, which is, itself, a response to a systemic crisis.  *See id*.

The first *TRAC* factor directs courts to examine whether "the time agencies take to make decisions" is governed by a "rule of reason."  *TRAC*, 750 F.2d at 80.  Importantly, "rules of reason are not judged on whether they provide the best solution to a problem, but whether they constitute a reasoned attempt to address mounting issues within a system."  *He*, 2024 WL 3708146 at *3 (citation and internal quotation marks omitted).  Plaintiff argues that the LIFO rule is unreasonable because it forces earlier asylum applicants to bear the brunt of processing delays.  (Compl. ¶ 31.)  However, as discussed above, because this consequence "is a byproduct of a reasoned attempt to address mounting issues with the asylum application process," numerous courts have found that the LIFO system constitutes a rule of reason that satisfies the first *TRAC* factor.  *See Zhang v. Wolf*, No. 19-CV-5370, 2020 WL 5878255, at *5 (E.D.N.Y. Sept.

8

30, 2020); *see also He*, 2024 WL 3708146 at *3 (finding that the "LIFO model, despite its

shortcomings, meets [the rule of reason] standard"); *Zheng*, 2024 WL 333090 at *6 ("[C]ourts

have found that the USCIS's use of LIFO in the asylum context is a rule of reason."); *Ying Yu Liu*

*v. Wolf*, No. 19-CV-410, 2020 WL 2836426, at *8 (S.D.N.Y. May 30, 2020) ("[T]he delayed

adjudication of Plaintiffs' asylum applications, while regrettable, is not the product of lack of

diligence … [r]ather, the delay was the result of the LIFO rule, which was itself a reasoned

response to a systemic crisis." (citation and internal quotation marks omitted)).  This Court, too,

finds that the LIFO rule satisfies the first *TRAC* factor.

Under the second *TRAC* factor, the Court considers whether Congress has provided a

timetable that "may supply content for [the first factor's] rule of reason."  *TRAC*, 750 F.2d at 80.

To be sure, the INA specifies a timetable promoting the prompt adjudication of asylum

applications.  8 U.S.C. § 1158(d)(5)(A)(ii)-(iii).  However, as discussed above, Congress

expressly declined to create any substantive or procedural right to enforce adjudication of an

asylum application within that timeframe.  *See id.* § 1158(d)(7).  Accordingly, "[a]s the weight of

authority on this issue has found, the timetables contained in § 1158(d)(5)(A) do not interfere

with finding that the LIFO rule provides a rule of reason, insofar as Congress's decision not to

structure the statute as creating a procedural right or benefit to enforce the timetables rendered

them non-binding."  *Chen*, 2020 WL 6825681 at *5 (citations omitted); *see also Xu v. Cissna,*

434 F. Supp. 3d 43, 53 (S.D.N.Y. 2020) (declining to "ascribe much significance to [the]

timetable [provided by § 1158(d)]" because the timetable "is not mandatory").

Under the third and fifth *TRAC* factors, the Court looks to the impact on human health

and welfare and the nature and extent of the interests prejudiced by the delayed adjudication.

*TRAC*, 750 F.2d at 80.  On this matter, Plaintiff has asserted that he "has lived over three years

awaiting . . . the benefits that are attached to asylee status." (Compl. ¶ 34.) "But this sort of prejudice is inherent in the asylum application process; worthy applicants are not entitled to benefits until their applications have been assessed and approved." *Xu*, 434 F. Supp. 3d at 53 (citation omitted). Plaintiff also alleges that his memory of the events relevant to his asylum application may fade the longer he waits, potentially implicating his credibility. (Compl. ¶ 34.) Because this risk, too, is inherent in the process of seeking asylum, the Court does not consider it a particularly prejudiced interest. *See id.*; *see also Zhu v. Cissna*, No. 18-CV-9698, 2019 WL 3064458, at *4 (C.D. Cal. Apr. 22, 2019) (stating that an applicant's inability to plan her future or travel outside of the United States constituted risk that was "inherent in the process of seeking asylum"). Plaintiff has not alleged any specific injury to his health or welfare. The Court also notes that Plaintiff is permitted to live in the United States without fear of being removed to his home country while his application is pending and can even apply for employment authorization during the pendency of his application. *See* 8 U.S.C. § 1158(d)(2).

Finally, the Court examines the fourth *TRAC* factor: "the effect of expediting delayed action on agency activities of a higher or competing priority." *TRAC*, 750 F.2d at 80. Defendants contend that judicial intervention in this case would result in both line-skipping that undermines USCIS's reasons for implementing the LIFO system and preferential treatment for those with the means to hire counsel to bring a suit. (Defs.' Mem. at 21.) The Court agrees. Indeed, moving Plaintiff's application to the front of the line "would undermine USCIS's ability to achieve the goal that motivated it to adopt the LIFO rule—specifically, to address the surge in newly-filed asylum applications that could leave the asylum system increasingly vulnerable to fraud and abuse." *Xu*, 434 F. Supp. 3d at 55 (citation and internal quotation marks omitted). And granting Plaintiff relief could unfairly incentivize the prioritization of asylum applicants who

10

have the wherewithal to retain private counsel to bring suit. *Pesantez*, 2015 WL 5475655, at *4. Plaintiff pleads no facts that provide the Court with a basis to single out his case for expedited resolution, where so many are deserving of prompt adjudication. *See Xu*, 434 F. Supp. 3d at 55 ("The effect of leapfrogging Plaintiff's application to the front of the line would do nothing to cure the deficiencies of the asylum application process; it would only harm other applicants, who are equally deserving of prompt adjudication.")

Having considered the *TRAC* factors, as well as the cause of the delayed adjudication, the Court finds that Plaintiff has failed to state a claim under the APA on the grounds that the adjudication on his asylum application is unreasonably delayed. Indeed, apart from the passage of time, Plaintiff has given no reason for the Court to compel USCIS to devote immediate attention to his asylum application. And "[t]he Supreme Court has held that evidence of the passage of time cannot, standing alone, support [a claim for unreasonably delayed administrative action]." *Espin v. Gantner*, 381 F. Supp. 2d 261, 265 (S.D.N.Y. 2005) (citing *Miranda*, 459 U.S. at 19). The Court also notes that the approximately three-year delay between the filling of Plaintiff's asylum application and the instant complaint is well below the length of time that other courts have found does not constitute unreasonable delay. *See, e.g.*, *Xu v. Nielsen*, No. 18-CV-2048, 2018 WL 2451202, at *2 (E.D.N.Y. May 31, 2018) (concluding that the plaintiff failed to state a claim for unreasonable delay where his asylum application had been pending for nearly five years); *Saleh v. Ridge*, 367 F. Supp. 2d 508, 513 (S.D.N.Y. 2005) (finding that a five-year delay in adjudicating an asylum application was not an unreasonable delay); *Boussana v. Johnson*, No. 14-CV-3757, 2015 WL 3651329, at *8 (S.D.N.Y. June 11, 2015) ("[C]ourts have generally found delays of four years or less not to be unreasonable." (citation and internal

quotation marks omitted)).  Thus, the Court grants Defendant's motion to dismiss Plaintiff's APA

claim.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Plaintiff's complaint is

GRANTED.

SO ORDERED.


Dated:  Brooklyn, New York                    /s/ LDH
       March 31, 2025                          LASHANN DEARCY HALL
                                 United States District Judge